UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION AT PIKEVILLE**

| | |
|---|---|
| LINDA JAN MINIX, | ) |
| | ) |
| Plaintiff, | ) Action No. 7:16-cv-00236-JMH |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| NANCY A. BERRYHILL[1], | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

** ** ** ** **

This matter is before the Court on the parties' cross-Motions
for Summary Judgment (DEs 7 and 9) on Plaintiff's appeal of the
Commissioner's denial of her application for Disability Insurance
Benefits (DIB).[2]  The matter having been fully briefed by the
parties is now ripe for this Court's review pursuant to 42 U.S.C.
§ 405(g).

## I.  Overview of the Process and the Instant Matter

In determining whether an individual is disabled, an
Administrative Law Judge ("ALJ") uses a five step analysis:

> 1. An individual who is working and engaging
>    in substantial gainful activity is not

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A.
Berryhill should be substituted as the defendant in this suit. No further
action needs to be taken to continue this suit by reason of the last sentence
of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] These are not traditional Rule 56 motions for summary judgment. Rather, it is
a procedural device by which the parties bring the administrative record before
the Court.

disabled, regardless of the claimant's
medical condition.

2. An individual who is working but does not
   have a "severe" impairment which
   significantly limits his physical or mental
   ability to do basic work activities is not
   disabled.
3. If an individual is not working and has a
   severe impairment which "meets the duration
   requirement and is listed in appendix 1 or
   equal to a listed impairment(s)", then he
   is disabled regardless of other factors.

4. If a decision cannot be reached based on
   current work activity and medical facts
   alone, and the claimant has a severe
   impairment, then the Secretary reviews the
   claimant's residual functional capacity and
   the physical and mental demands of the
   claimant's previous work. If the claimant
   is able to continue to do this previous
   work, then he is not disabled.

5. If the claimant cannot do any work he did
   in the past because of a severe impairment,
   then the Secretary considers his residual
   functional capacity, age, education, and
   past work experience to see if he can do
   other work. If he cannot, the claimant is
   disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th

Cir. 1994)(citing 20 C.F.R. § 404.1520(1982)).

## II.

Plaintiff filed an application for Disability Insurance

Benefits (DIB), alleging disability beginning January 28, 2013

(Tr. 223). The application was denied initially and on

reconsideration (Tr. 99, 100), and by an Administrative Law Judge

(ALJ) after two hearings (Tr. 72-81, 82-98). The Appeals Council declined Plaintiff's request for review (Tr. 1-6), making the ALJ's October 14, 2015 decision the final agency decision for purposes of judicial review (Tr. 56-71). 20 C.F.R. § 422.210(a).[3] This appeal followed.

## III.

Plaintiff was 49 years old at the time she allegedly became disabled on January 28, 2013, and 52 years old at the time of the Commissioner's October 14, 2015 final decision (Tr. 223). Plaintiff has the equivalent of a high school education (GED) (Tr. 240), and past relevant work as an assistant store manager, store manager, and dental office receptionist (Tr. 77-78, 97, 240). In her application materials, Plaintiff alleged she became unable to work due to back and wrist conditions (Tr. 239).

Plaintiff has restricted her arguments to the ALJ's physical residual functional capacity assessment. Plaintiff's Brief (Pl.'s Br.) at 7-12. Therefore, it is unnecessary to discuss Plaintiff's purported mental impairments.

Ira Potter, M.D., has treated Plaintiff as her family care physician since at least late February 2013 (Tr. 325-326). However, Dr. Potter's exam findings were generally unchanged from 2013 to 2015, and Plaintiff's visits were primarily for regular follow-up

---

[3] All subsequent citations are only to part 404 of the regulations, which pertain to DIB.

and medication refills (Tr. 329-333, 346-356, 363-365, 371-372, 415-428, 436, 439-446, 458-468). Dr. Potter's treatment notes show Plaintiff had a normal straight leg raise, motor strength, sensation; no wrist swelling; generally normal lower extremities and normal motor function and movement of all extremities; normal joint stability of the upper extremities; and the ability to stand without difficulty (Tr. 325-326, 346-356, 363-365, 371-372, 382-386, 415-428, 439-446, 458-468). An associated April 2014 x-ray of Plaintiff's lumbar spine resulted in an impression of degenerative disc disease with no acute fracture or subluxation (Tr. 438).

Nonetheless, Dr. Potter provided medical source statements in March 2014 that contained very restrictive limitations (Tr. 376-380). Dr. Potter opined that Plaintiff would be subject to restrictions with lifting 10-15 pounds occasionally; standing and walking for 2 hours a day; and sitting for 3 hours a day. Dr. Potter opined that Plaintiff could not perform sustained lifting, carrying, handwork, standing, or working with the arms and hands for six to eight hours due to severe lumbar degenerative disc disease, severe osteoarthritis of the bilateral upper extremities and hips, moderate bilateral wrist pain, and moderate osteoporosis. Dr. Potter provided an additional one-page check-the-box medical source statement in August 2015. Dr. Potter opined that Plaintiff experiences wrist and hand pain and would be limited to occasional fine and gross manipulation with her hands (Tr. 471).

4

In late June 2013, Stephen Nutter, M.D., saw Plaintiff for a consultative physical examination (Tr. 336-340). Plaintiff reported her chief complaint to be disability due to her back. Dr. Nutter's physical examination revealed that Plaintiff ambulated with a normal gait and did not require a handheld assistive device. Straight leg raise test was normal in both the sitting and supine positions. Dr. Nutter noted that there was range of motion abnormalities of the dorsolumbar spine but intact sensory testing in her lower extremities except for loss of pinprick and light touch in the right leg. Examination of the legs revealed crepitus in the knees, but not the ankles or feet. There was no tenderness, redness, warmth, swelling, fluid, or laxity. Physical examination revealed pain and tenderness in Plaintiff's left wrist but no pain or tenderness in her right wrist. Examination of the hands revealed no tenderness, redness, warmth or swelling. Plaintiff's grip strength as 5/5 with normal range of motion of the finger joints in both hands. Dr. Nutter opined that Plaintiff would be subject to limitations in walking, bending, stooping, lifting, crawling, squatting, carrying and traveling as well as in pushing and pulling heavy objects. However, Dr. Nutter did not set forth specific limitations in any of these areas (Tr. 470-475).

In April 2015, medical expert Louis Fuchs, M. D., opined that Plaintiff could lift/carry 20 pounds occasionally; sit two hours at a time up to eight hours total; stand one hour at a time up to

three hours total; and walk one hour at a time up to three hours total in an eight-hour workday; with frequent fine and gross manipulation; no climbing of ladders and scaffolds; and mostly occasional postural limitations including stooping, kneeling, crouching, and crawling; with no limitation in balancing. Dr. Fuchs further opined that Plaintiff could tolerate frequent exposure to moving mechanical parts and operation of a motor vehicle, but no exposure to vibrations and occasional exposure to humidity, wetness, and extreme temperatures. In support of his assessment, Dr. Fuchs pointed out that exams showed decreased spinal motion, decreased grip in the left hand, and occasional reflex alteration, but generally intact neurological findings (Tr. 448-456).

State agency physician Jack Reed, M.D., reviewed the records in late August 2013 and opined that Plaintiff was limited to light exertion work with additional postural and environmental limitations consisting of no climbing ladders, ropes, and scaffolds; occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling; and avoid concentrated exposure to extreme temperatures and hazards (Tr. 118-120).

At the March 2015 administrative hearing, Plaintiff testified that the primary reason she was unable to work was due to back pain with numbness and tingling that went down into her hip, leg, and foot (Tr. 88). She also said that she experiences pain in her left wrist that was made worse with changes in the weather and

that her right wrist was weak (Tr. 91). Plaintiff said that she had a GED and had not worked since January 2013 (Tr. 87). Plaintiff described her past work activities and said that she could stand for 30-45 minutes at a time; sit for 30 minutes at a time; and walk for one-quarter mile (Tr. 87-90). She also testified as to her daily activities (Tr. 94-95). At the August 2015 hearing, Plaintiff testified that she had trouble with both hands, mostly the left hand and numbness, tingling, and grip in the right hand (Tr. 76).

A vocational expert, Anthony T. Michael, Jr., testified at both the August 2015 and March 2015 administrative hearings (Tr. 77-80, 96-97). The vocational expert testified that his testimony was consistent with the Dictionary of Occupational Titles, as applicable (Tr. 80). The vocational expert testified that Plaintiff's past work was semi-skilled to skilled and ranged from sedentary to light exertion as generally performed in the national economy (Tr. 77, 96-97). At the August 2015 hearing, the ALJ asked the vocational expert to assume a hypothetical individual of Plaintiff's age, education, and work experience with limitations the same as those ultimately determined by the ALJ to be those of the Plaintiff. The vocational expert testified that such an individual could perform Plaintiff's past relevant work (as generally performed in the national economy) at the light and sedentary levels of exertion as well as additional representative

occupations at the light and sedentary levels of exertion (Tr. 79). The ALJ then asked if the individual would be able to work if she had other limitations not part of his ultimate residual functional capacity finding. The vocational expert said that the first set of hypothetical limitations would allow for the performance of Plaintiff's past work as generally performed as well as additional positions at the light and sedentary levels of exertion (Tr. 78), while the third set of hypothetical limitations would preclude employment (Tr. 80). Plaintiff's counsel had no questions of the vocational expert (Tr. 80).

After a careful review of the record, the ALJ found that Plaintiff had severe physical impairments including lumbar degenerative disc disease with history of L5-S1 microdiskectomy, thoracic degenerative disc disease, osteoarthritis, chronic myofasciitis, osteoporosis, and history of left wrist open reduction and internal fixation surgery (Tr. 58; Finding No. 3). The ALJ found that Plaintiff's impairments, singly or in combination, did not meet or equal the severity of a listed impairment (Tr. 58-59; Finding No. 4). The ALJ found that Plaintiff's complaints of disabling limitations were not entirely credible (Tr. 60). Finally, the ALJ found that Plaintiff had the residual functional capacity to do light exertion work with additional postural, manipulative and environmental limitations (Tr. 59-64; Finding No. 5), including her past relevant work as an

assistant store manager, store manager, and dental office receptionist (Tr. 64; Finding No. 6). Thus, the ALJ found that Plaintiff was not a disability from her alleged disability onset date of January 28, 2013, through October 19, 2015, the date of the Commissioner's final decision (Tr. 66; Finding No. 7).

## IV.

When reviewing a decision made by the ALJ, the Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). "The ALJ's findings are conclusive as long as they are supported by substantial evidence." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted). Substantial evidence "means such relevant evidence as a reasonable mind might accept." *Foster*, 279 F.3d at 353.

Plaintiff bears the ultimate burden of proving disability. *See* 42 U.S.C. § 423(d)(5); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984). The regulations require Plaintiff to offer the evidence he believes will prove disability. *See* 20 C.F.R. §§ 404.1512(a), (c), 404.1513(e), 404.1516 (2016); *Barnhart v. Thomas*, 540 U.S. 20 (2003) (the Commissioner's regulations deserve deference). Plaintiff failed to meet her burden.

## V.

9

Beyond a general argument that the ALJ's residual functional capacity assessment was not supported by substantial evidence, Plaintiff presents two narrow challenges to the ALJ's consideration of her disability claim. She argues that in assessing her residual functional capacity, the ALJ did not properly evaluate medical source opinions and that his residual functional capacity finding was improperly based on the limitations assessed by medical expert Dr. Fuchs. Pl.'s Br. at 7, 10. Plaintiff has thus waived any arguments as to any other issue not raised or argued with specificity in her brief. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal."); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation omitted)). As discussed below, Plaintiff's arguments about the ALJ's consideration of the medical opinions of record, and her residual functional capacity finding do not withstand scrutiny. The Court finds that the ALJ reasonably considered the total record in the making of his residual functional capacity finding and in determining that Plaintiff retained the capacity to perform her past relevant work as well as the identified representative light and sedentary exertion occupations.

While Plaintiff may have had physical and mental limitations that negatively affected her ability to work, the mere existence of impairments such as those alleged by Plaintiff is insufficient to establish disability under the stringent standards of the Act. Instead, Plaintiff had to show that her impairments caused functional limitations so severe that she was unable to engage in any substantial gainful activity for a continuous period of at least 12 months. *See Barnhart v. Walton*, 535 U.S. 212, 220 (2002); 42 U.S.C. § 423 423(d)(1)(A). The disability, not just the impairment, must last 12 months. *Walton*, 535 U.S. at 220. Here, the evidence simply does not support Plaintiff's claims of completely disabling limitations through the date of the ALJ's decision. See 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider inconsistencies in the evidence; *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis.").

The real question before this Court is whether the ALJ's residual functional capacity finding was reasonable. A claimant's residual functional. A claimant's residual functional capacity is assessed by the ALJ between steps three and four and is "the most [a claimant] can still do despite [his] impairments." 20 C.F.R. §§

404.1520(a)(4), 404.1545(a)(1) & (5). An ALJ is required to "assess a claimant's residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Thus, no medical source opinion is alone conclusive on this issue. SSR 96-5p, 1996 WL 374183, at *2, 4-5. While there is a limited burden shift to the Commissioner at step five of the sequential evaluation to identify work existing in significant numbers in the national economy that a claimant can perform, the claimant retains the burden of establishing her residual functional capacity limitations. *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citation omitted) ("The SSA's burden at the fifth step is to prove the availability of jobs in the national economy that the claimant is capable of performing . . . The claimant, however, retains the burden of proving his lack of residual functional capacity."); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

In his October 2015 decision, the ALJ carefully and reasonably considered the total record (Tr. 56, 58, 59; Finding No. 5), including the findings and opinions of Plaintiff's treating and examining physicians, the opinions of the state agency medical expert expressed in responses to interrogatories, and the opinions of a state agency medical consultant (Tr. 59-64). Further, the ALJ determined that in addition to her past relevant work, a significant number of jobs remained in the national economy that

Plaintiff retained the capacity to perform (Tr. 64-66; Finding No. 6).

The ALJ reasonably declined to afford Dr. Potter's medical source statements as to the extent of Plaintiff's functional limitations more than "little weight," noting that there was insufficient evidence in treatment records, including in Dr. Potter's own examination findings, to support Plaintiff's allegations of disabling limitations (Tr. 63-64; Tr. 325-326, 346-356, 363-365, 371-372, 382-386, 415-428, 439-446, 458-468). See *Dyer v. Soc. Sec. Admin*, 568 F.App'x 422, 425 (6th Cir. 2014) (unpublished) (the opinion of a treating source may be discounted "where that opinion was inconsistent with other evidence of record or the assessment relied on subjective symptoms without the support of objective findings.") Further, the ALJ pointed out that he had reasonably accounted for Plaintiff's diffuse pain, numbness, and limited mobility from lumbar and thoracic degenerative disc disease, osteoarthritis, chronic myofasciitis, osteoporosis, and history of left wrist open reduction and internal fixation surgery by restricting her to a range of light work, with an additional limitation of standing and/or walking no more than one hour and sitting two hours at a time in an eight-hour workday (Tr. 62). See *Richardson v. Perales, 402 U.S. at 399* ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")

Moreover, Dr. Nutter's June 2013 consultative examination revealed that Plaintiff ambulated with a normal gait and did not require a handheld assistive device. Straight leg raise test was normal in both the sitting and supine positions. Dr. Nutter noted that there was range of motion abnormalities of the dorsolumbar spine but intact sensory testing in her lower extremities except for loss of pinprick and light touch in the right leg. Examination of the legs revealed crepitus in the knees, but not the ankles or feet. Dr. Nutter's physical examination of Plaintiff revealed pain and tenderness in the left wrist but no pain or tenderness in her right wrist. Examination of the hands revealed no tenderness, redness, warmth or swelling. Plaintiff's grip strength was 5/5 with normal range of motion of the finger joints in both hands. Dr. Nutter opined that Plaintiff would be subject to limitations in walking, bending, stooping, lifting, crawling, squatting, carrying and traveling as well as in pushing and pulling heavy objects. Dr. Nutter did not set forth specific limitations in any of these areas (Tr. 336-340).

Contrary to Plaintiff's argument, the Court's review of the objective findings contained in Dr. Nutter's consultative examination report reveals nothing that would be appreciably at odds with the ALJ's reasonable residual functional capacity determination and ultimate decision that Plaintiff could perform

her past relevant work as well as the representative light and sedentary exertion jobs as identified by the vocational expert.

The ALJ's reasonable residual functional capacity finding is buttressed by the opinions of both the medical expert, Dr. Fuchs, and the state agency medical consultant, Dr. Reed. In April 2015 responses to interrogatories, Dr. Fuchs opined that Plaintiff retained the residual functional capacity for light exertion work with additional postural, manipulative and environmental limitations (Tr. 448-456). Specifically, Dr. Fuchs opined that Plaintiff could lift/carry 20 pounds occasionally; sit two hours at a time up to eight hours total; stand one hour at a time up to three hours total; and walk one hour at a time up to three hours total in an eight-hour workday; with frequent fine and gross manipulation; no climbing of ladders and scaffolds; and mostly occasional postural limitations including stooping, kneeling, crouching, and crawling; with no limitation in balancing. Dr. Fuchs further opined that Plaintiff could tolerate frequent exposure to moving mechanical parts and operation of a motor vehicle, but no exposure to vibrations and occasional exposure to humidity, wetness, and extreme temperatures. The ALJ gave Dr. Fuchs's opinions reasonable consideration and accorded them "great weight" (Tr. 62).

Plaintiff's argument that Dr. Fuchs did not consider the remote September 1999 operative report from St. Mary's Hospital

(over 13 years before Plaintiff's alleged disability onset date),

and an April 2014 x-ray of Plaintiff's lumbar spine (Tr. 300-316,

438), Pl.'s Br. At 10-12, is without merit.  Plaintiff has no basis

for her unsupported assertions that Dr. Fuchs's own report

indicates that he did not review the above noted records. Review

of Dr. Fuchs's interrogatory responses reveals nothing of the sort

and Plaintiff's argument is, at the very least, disingenuous.

Instead, Dr. Fuchs merely pointed out evidence that supported his

opinions as to the extent of Plaintiff's physical limitations (Tr.

448-456). *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275

(6th Cir. 2010) (the burden of proving disability lies with the

claimant).

Further, the ALJ accorded the opinions of state agency medical

consultant, Dr. Reed, "considerable weight" (Tr. 62-63). The ALJ

reasonably pointed out that although Dr. Reed's opinions were

consistent with the medical evidence at the time of his evaluation,

newer evidence merited additional limitations in Plaintiff's

ability to stand, walk, and perform fine and gross manipulation

(Tr. 62-63). As "[s]tate agency medical and psychological

consultants . . . are highly qualified physicians and psychologists

who are also experts in Social Security disability evaluation." 20

C.F.R. § 404.1527(e)(2)(i), the decision to give more weight to a

state agency doctor over treating and examining doctors is, indeed,

16

permissible. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

Because the ALJ's residual functional capacity finding was supported by substantial evidence, the Court should affirm the ALJ's decision. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010) ("Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence."). Further, because the ALJ carefully considered the entire record (Tr. 56, 58, 59; Finding No. 5), and reasonably weighed all medical opinions and considered all relevant medical findings before him including those provided by treating and examining physicians, medical experts, and state agency medical consultants, his evaluation of these medical findings and opinions does not support Plaintiff's request for remand but, rather, establish that his decision was, in fact, supported by substantial evidence (Tr. 59-64).

Other than her unsupported argument that Dr. Fuch did not review remote records from Plaintiff's back surgery in 1999 and an April 2014 x-ray of her lumbar spine, Plaintiff essentially argues that the evidence could be weighed differently to support a finding of disability. Pl.'s Br. at 7-12. However, that is not the Court's role on substantial evidence review. *Kyle*, 609 F.3d at 854-55. Regardless of whether the Court would have made the same findings

in the first instance, the Court shall affirm the ALJ's findings because they are supported by substantial evidence. *Id*. Contrary to Plaintiff's arguments, and as review of the ALJ's October 14, 2015 decision and associated List of Exhibits clearly shows (Tr. 56-71), because the ALJ carefully considered the entire record before him including all medical source opinions about Plaintiff's physical limitations as well as findings and opinions from treating, examining and state agency medical consultants, his reasonable treatment of these medical opinions and relevant medical findings does not support Plaintiff's request for remand.

In summary, the ALJ properly considered and reasonably weighed the medical source opinions. Moreover, determining whether Plaintiff was disabled is ultimately the responsibility of the ALJ. *Id*. Again, even if substantial evidence existed to support Plaintiff's claim, the Court would affirm the Commissioner's decision because it is supported by substantial evidence. *See Buxton v. Halter*, 246 F.3d at 772; *see also Smith v. Chater,* 99 F.3d 780, 782 (6th Cir. 1996) (even if the Court would have decided the matter differently than the ALJ, if substantial evidence supports the ALJ's decision, it must be affirmed).

The ALJ's finding that Plaintiff could perform light exertion work with additional specific postural, environmental and manipulative limitations, including her past relevant work, was supported by substantial evidence in the record. 20 C.F.R. §

404.1560(b)(2) (stating that a vocational expert may offer relevant evidence concerning the demands of the claimant's past relevant work (as generally and actually performed), and may testify in response to a hypothetical question about whether a person with the claimant's limitations can meet the demands of the claimant's past relevant work); 68 Fed. Reg. 51153, 51160 (Aug. 26, 2003) (comments to final rule) ("VE testimony is not a requirement at step 4, but . . . VE testimony may be obtained at step 4 to provide evidence to help us determine whether or not an individual can do his or her past relevant work."). The vocational expert's response to the ALJ's hypothetical question that included Plaintiff's credible limitations constitutes substantial evidence in support of the ALJ's finding that there were jobs in the national economy that Plaintiff could perform including her past relevant work as generally performed in the national economy and the additional representative light and sedentary exertion positions identified by the vocational expert (Tr. 64-66, Finding No. 6; Tr. 78-79).

The plaintiff has failed to demonstrate that the Acting Commissioner's final decision that she was able to perform her past relevant work as generally performed in the national economy as well as the representative positions at the light and sedentary levels of exertion lacks substantial evidentiary support.  The Acting Commissioner's final decision shall be affirmed.

## VI.

For all of the reasons set forth above,

**IT IS ORDERED**:

1)    that Plaintiff's Motion for Summary Judgment (DE 10) is

**DENIED;**

2)    that Defendant's Motion for Summary Judgment (DE 12) is

**GRANTED,** and;

3)    The Acting Commissioner's final decision is **AFFIRMED.**

This the 27th day of October, 2017.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge